### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| **In re:** | * | |
| | | |
| **CHESAPEAKE ROW HOMES, LLC** | * | **Case No. 14-27752-NVA** |
| **HARBOR PIER HOMES, LLC** | | **Case No. 14-27753-NVA** |
| **INBROOK HOMES, LLC** | * | **Case No. 14-27754-NVA** |
| **MD LIBERTY HOMES, LLC** | | **Case No. 14-27755-NVA** |
| **NICKYS ROW HOMES LLC** | * | **Case No. 14-27757-NVA** |
| **PORT HOMES, LLC** | | **Case No. 14-27758-NVA** |
| **WIZ HOMES LLC,** | * | **Case No. 14-27759-NVA** |
| | | **(Jointly Admin. Case No. 14-27752-NVA)** |
| **Debtors.** | * | **(Chapter 11)** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **COLDSTREAM-HOMESTEAD-** | * | **Adversary Pro. No. 14-00828** |
| **MONTEBELLO COMMUNITY** | | |
| **CORPORATION, ET AL.,** | * | |
| | | |
| **Plaintiffs,** | * | |
| | | |
| **v.** | * | |
| | | |
| **SCOTT WIZIG, ET AL.** | * | |
| | | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OF LAW IN SUPPORT OF
### <u>PLAINTIFFS' MOTION TO ABSTAIN OR REMAND</u>

Plaintiffs/Creditors Coldstream-Homestead-Montebello Community Corporation;

Alliance of Rosemont Community Organizations, Inc.; Mount Clare Community Council, Inc.;

Carrollton Ridge Community Association, Inc.; Operation ReachOut SouthWest, Inc.; and the

Greater Greenmount Community Association, Inc. (the "Communities"), pursuant to Local

Bankruptcy Rules 5011 and 9013, respectfully submit this Memorandum of Law in support of their motion requesting an order from this Court abstaining from hearing the Amended Complaint and action in *Coldstream-Homestead-Montebello Community Corporation, et al. v. Scott Wizig, et al.*, Circuit Court for Baltimore City No. 24-C-13002570 (the "Civil Action"), and remanding the Civil Action to the Circuit Court for Baltimore City where it was originally filed and was scheduled to go to trial in January 2015.

## INTRODUCTION

The seven entities that comprise these jointly administered bankruptcy cases—Chesapeake Row Homes, LLC; Harbor Pier Homes, LLC; Inbrook Homes, LLC; MD Liberty Homes, LLC; Nicky's Row Homes, LLC; Port Homes, LLC and Wiz Homes, LLC (the "Debtors")—are defendants in the Civil Action that is the subject of adversary proceeding No. 14-0828, which was commenced upon the Debtors' (and other defendants') filing of a Notice of Removal of the Civil Action. Five other related parties are also defendants in the Civil Action—Scott Wizig, an individual; Baltimore Return Fund, LLC; Compound Yield Play, LLC; SWE Homes L.P.; and SWE Homes GP LLC—but the Communities are not aware of any bankruptcy filings by those parties.[1] The Plaintiff Communities instituted the Civil Action in April 2013. The claims and remedies asserted in the Civil Action are based on nuisance and tort claims under Maryland law involving the Debtors' ownership of 25 vacant properties[2] in Baltimore City. *See generally* Ex. 1, Amended Complaint. They particularly concern a provision of the Maryland Real Property Article known as the "Community Bill of Rights."

---

[1] The Debtors and the other five defendants in the Civil Action are related to and tied together by one common bond: Scott Wizig.
[2] Baltimore Return Fund, LLC and Compound Yield Play, LLC own 32 other vacant properties at issue in the Civil Action.

On July 31, 2014, the Circuit Court for Baltimore City (the "Circuit Court") issued an order granting partial summary judgment in favor of the Communities against the Debtors and three of the other defendants, including Mr. Wizig (the "Order"). *See generally* Ex. 2. The Circuit Court's Order concluded that the Communities had established their nuisance claim as a matter of law and required the Debtors and Mr. Wizig to remediate the unsafe and uninhabitable conditions of 49 of the properties within 90 days. A hearing was scheduled for November 19, 2014, at which time the Communities intended to raise the Debtors' and Mr. Wizig's noncompliance with the Order, and trial was set for January 22, 2015. Facing noncompliance with the Circuit Court's partial summary judgment Order and with trial looming, the Debtors filed their bankruptcy cases on November 18, 2014 in an apparent attempt to slow down the litigation and avoid proceeding further in the Circuit Court. Indeed, today Debtors filed Motions for 2004 Examinations (the "2004 Motions") seeking discovery from the Communities. The 2004 Motions further expose the intent behind Debtors' removal of the Civil Action—to re-litigate their case and get a second bite of the discovery apple.

The Court should abstain from hearing the Civil Action and remand the Civil Action to the Circuit Court pursuant to the permissive abstention language of 28 U.S.C. § 1334(c)(1). As discussed in more detail below, all of the nuisance-related causes of action asserted in the Civil Action arise entirely under Maryland law, some of them are against non-debtor defendants, and there are no bankruptcy issues involved in the claims. The Civil Action should be heard and determined in a Maryland state court which is familiar with the applicable laws and already familiar with the relevant facts of the case; indeed, the Circuit Court had dealt with this case for more than 1.5 years when the Debtors initiated bankruptcy, discovery was closed except for the deposition of Mr. Wizig, and trial was scheduled for approximately one month from now. As

3

measured from the date the Complaint was filed to the last-scheduled trial day of trial, the litigation was approximately 90% complete as of the date the Debtors initiated bankruptcy.

Because the claims asserted in the Civil Action are non-core, this Court cannot enter a final order in the Civil Action.  In addition, the Communities prayed for and are entitled to a jury trial of the Civil Action. If the Civil Action were to remain in this Court, the jury trial demand would mandate a withdrawal of the reference from this Court and the actual trial would be conducted in the District Court. Consequently, judicial economy will also be served if this Court abstains from hearing the Civil Action.

The Court also should abstain from hearing the Civil Action pursuant to its discretion to remand on any equitable ground.  The decision whether to remand on equitable grounds largely mirrors the considerations for permissive abstention.  Here, the need for prompt enforcement of the Circuit Court's Order requiring Debtors and Mr. Wizig to remediate the unsafe and uninhabitable conditions of 49 of the properties provides an additional reason for the Court to remand in the interest of justice.  While the Debtors have done some work to the properties, nearly five months have passed since the Order was issued.  The work is very much ongoing, and a dispute could arise that requires a court to imminently determine whether the Debtors and Mr. Wizig are in compliance with the Order.  Judge White in the Circuit Court, who issued the Order, is in the best position to address that pressing issue within the context of the Civil Action; thus, equitable considerations strongly favor remand.

## FACTUAL BACKGROUND

On April 30, 2013, the Communities instituted the Civil Action against the Debtors, Mr. Wizig, Baltimore Return Fund, LLC, and Compound Yield Play, LLC.  SWE Homes L.P. and

8871644

SWE Homes GP LLC were later added as Defendants.[3]  The Civil Action arose out of Defendants' continuing violations of state and local laws by ignoring the unsafe and uninhabitable conditions of approximately 140 Baltimore City properties they own and manage, 57 of which are the subject of the Civil Action.

The Debtors own 25 of the 57 properties that are the subject of the Civil Action.  Two related but non-debtor entities, Baltimore Return Fund, LLC, and Compound Yield Play, LLC, own the remaining 32 properties.  All of the Debtors shared Defendant Scott Wizig as their managing member until October 24, 2014, when a recently formed entity known as Descendants Property LLC became the sole managing member of each Debtor.  The Debtors and members of SWE Homes GP LLC contracted with SWE Homes L.P. to manage the Properties.  Mr. Wizig is the President of both SWE Homes entities (SWE is an acronym for Scott Wizig Enterprises). Mr. Wizig, individually and through the Debtors, failed to remediate the nuisance conditions and code violations at any of the vacant properties, which were purchased primarily through foreclosure of tax lien certificates.

As set forth in the Amended Complaint in the Civil Action (*see* Ex. 1), this process of acquiring properties in disrepair, contracting with related entities for the maintenance of the properties, and failing to properly abate any of their various Baltimore City code violations established a pattern and practice over a number of years that threatens the welfare of the Communities' neighborhoods.  Working in conjunction with Baltimore City agencies, other nonprofits, and for-profit businesses in their neighborhoods, the Communities expend considerable effort to ensure the well-being of their residents.  The efforts of the Communities

---

[3] For ease of reference, all of the defendants in the Civil Action will be referred to as "Defendants."

have been hindered, however, by the failure and refusal of the Defendants to maintain the properties within the Communities in a stable and livable condition.

The Communities alleged in the Civil Action that these dangerous conditions significantly and negatively affect the use and enjoyment of adjoining properties as well as the health, safety and welfare of the neighborhoods in which the properties sit, and have led to an unreasonable interference with a right that is common to the general public.  The Communities also claimed that Defendants, including Debtors, knowingly disregarded the accumulation of debris, garbage, refuse, graffiti, weeds, overgrown vegetation, and other offensive, dangerous, unhealthy, and unsanitary matter on their properties throughout the City of Baltimore, which resulted in numerous violation notices from the Baltimore City Department of Housing and Community Development.  As set forth in the Amended Complaint, the Communities alleged that those violations constitute a public nuisance and nuisance per se, and that Defendants' business practice also constitutes a nuisance.

The Amended Complaint specifically lodged three state law-based claims against the Debtors—public nuisance (Count I), nuisance per se (Count II),[4] and nuisance by business practice (Count III).  *See* Ex. 1 at 14 – 19.  Plaintiffs moved for summary judgment on their nuisance per se claim with respect to 49 of the properties on April 25, 2014.  On July 31, 2014, Judge Pamela White of the Circuit Court issued the Order granting the Communities' motion, concluding that "there is no genuine dispute as to any material fact necessary to resolve the

---

[4] Real Property § 14-123 of the Annotated Code of Maryland, known as the "Community Bill of Rights," expressly permits a community association in Baltimore City to seek injunctive and equitable relief in the Circuit Court for Baltimore City for abatement of any nuisance conditions that violate certain local code provisions, including Baltimore's Building, Fire, and Related Codes, and the Health Code and Zoning Code.  Count Two of the Amended Complaint in the Civil Action specifically alleges that the condition of the vacant buildings is a nuisance per se under the Community Bill of Rights and that the Communities have a right to relief from those conditions.  *See* Ex. 1 at 16 – 17.

6

Plaintiffs' claim of Nuisance and Defendants' violations of the Baltimore City Code, as a matter of law, and Plaintiffs are entitled to judgment so as to require each Defendant's remediation of unsafe and uninhabitable conditions of the 49 vacant properties identified in this Order." *See* Ex. 2, Order at 1. The Order further required, with respect to the Debtors and the 24 properties they own that are subject to the Order, that the Debtors and Mr. Wizig "abate the nuisance conditions and remedy all existing code violations…within 90 days of the entry of this Order." *Id.* at 1 – 3. Thus, November 4, 2014 was the deadline for the Debtors to satisfy the requirements of the Order. The Communities understand that some work has been done on some of the properties, but the Order has not been satisfied. Moreover, partial demolitions performed exacerbated or created new dangerous, nuisance conditions since issuance of the Order.

A hearing in the Civil Action was scheduled for November 19, 2014, at which time the Communities intended to raise the lack of compliance with the Order with Judge White. However, the Communities never got that opportunity. On November 18, 2014, the day before the Circuit Court's scheduled hearing, the Debtors filed for bankruptcy and filed a Notice of Removal of the Civil Action, thereby removing the Civil Action from the Circuit Court to this Court, even though the claims against Mr. Wizig, the two other LLCs that owned 32 of the 57 properties in the Civil Action, and the two entities, SWE Homes L.P. and SWE Homes GP LLC, who contracted to manage all of the properties involved, remained. The Communities are asking this Court to abstain from hearing the Civil Action and to remand the Civil Action to the Circuit Court.

8871644

<u>**ARGUMENT**</u>

I.    <u>**The Court Should Abstain from Deciding This Case Based on Application of the Permissive Abstention Factors.**</u>

The permissive abstention statute permits this Court in the interest of justice, in the interest of comity with state courts, or out of respect for State law, to abstain and remand the Civil Action to the Circuit Court. *See* 28 U.S.C. § 1334(c)(1). Courts have considered the following nonexclusive criteria in determining when to exercise discretion and abstain from hearing a case under section 1334(c)(1):

1.    Efficiency in the administration of the debtor's estate;

2.    The extent to which state issues predominate over bankruptcy issues;

3.    Whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court;

4.    The presence of a related proceeding commenced in state court;

5.    The existence of a jurisdictional basis other than section 1334;

6.    The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7.    The substance rather than the form of an asserted "core" proceeding;

8.    The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court;

9.    The burden of the federal court's docket;

10.   The likelihood that the commencement of the proceeding in federal court involved forum shopping by one of the parties;

11.   The existence of a right to a jury trial; and

8871644

12.     Whether non-debtor parties are involved in the proceeding.

*See In re Colleen, Inc.*, 406 B.R. 674, 680 (2009) (Alquist, B.J.) (citing *Porter-Hayden Co. v. First State Management Group (In re Porter Hayden Co.)*, 304 B.R. 725, 735 (2004)).

Factor No. 1

The first factor concerning efficient administration of the estate weighs in favor of abstention. To the extent that the Civil Action impacts the bankruptcy, it will be more expedient to complete the litigation in the Circuit Court where it has already been pending for 1.5 years and where trial is set to begin in approximately one month, than to begin litigation anew in this Court. When the Debtors filed for bankruptcy and the Civil Action was removed to this Court, the case was approximately two months away from a January 22-23, 2015 jury trial. Discovery was concluded, except for a deposition of Mr. Wizig that was scheduled to occur on November 20, 2014, two days after the Debtors removed the case. At this juncture, if the case is remanded to the Circuit Court the only dates that would need to be scheduled by the court would be a final pretrial conference and trial. In addition, the Circuit Court is in the best position to address the Debtors' ongoing noncompliance with the Circuit Court's partial summary judgment Order. Resolving the Civil Action more quickly will allow for a much more efficient administration of the estate.

The clear advantages of the Circuit Court contrast significantly with the limitations of the adversary proceeding, which began less than one month ago. As a threshold matter, there was a jury demand in the Civil Action, which means that the claims must be adjudicated in the District Court absent consents. *See Travelers Ins. Co. v. Goldberg*, 135 B.R. 788, 792 (D. Md. 1992) (reference must be withdrawn in order to conduct trial, though the bankruptcy court may supervise pretrial proceedings). Allowing the Civil Action to be heard in the Circuit Court

9

avoids surmounting the additional procedural hurdles required to insure that the Communities

receive the jury trial to which they are entitled.  In addition, the issues are strictly state law

issues that require no bankruptcy expertise and, instead, are the type of issues that are regularly

dealt with by Maryland state courts.

Also, the bankruptcy case is in its early stages and, as evidence by the Debtors' 2004

Motions, the Debtors are seeking to re-litigate their case and get a second bite of the discovery

apple.  During the Civil Action, the Communities served expert witness disclosures on the

defendants, including a disclosure regarding their damages expert who is designated to testify

about the loss of property values in the different Communities as a result of the nuisance

conditions on defendants' properties.  Debtors seek to blame their prior counsel for not

obtaining more information about the theory or method of the Communities' damages during

the discovery period of the Civil Action.  *See* 2004 Motion at ¶7 [Doc 25].   The Communities

should not be penalized for the Debtors' litigation strategy during the Civil Action and be

required, on the eve of what would have been trial in the Civil Action, to respond to the

Debtors' broad requests for production of documents.  Although Debtors' 2004 Motions

suggest that they are seeking discovery on the Communities' damages, the document requests

they attached to the 2004 Motions are far more broad than that and include 30 requests on a

range of topics related to the Civil Action and the Communities' claims.  *See* Ex. 1 to the 2004

Motions.  Rather than promoting the "swift and proper administration of the Debtor's

bankruptcy estate," as the Debtors suggest (*see* 2004 motion at ¶8), the broad discovery sought

by the Debtors only will slow down resolution of the Civil Action.  If Debtors truly believed

that the basis for the Communities' damages claim is what bears on the formulation of their

reorganization plan, they would not have propounded broad discovery covering different

8871644

aspects of the Civil Action.  The Circuit Court, which has presided over the Civil Action for the entire course of discovery, is in a better position to decide whether and to what extent the Debtors should be given an opportunity to conduct discovery at this late stage of the litigation.

Given the fact that the adversary proceeding is at its infancy, that Judge White in the Circuit Court has been involved in the case for much of 2014, and that trial is all that remains if the case is remanded, a remand to the Circuit Court would be a more efficient way to administer the Debtors' estate.

Factor No. 2

The second factor, concerning predominance of state law issues, weighs heavily in favor of abstention.  The Communities' claims against the Debtor in the Civil Action are for nuisance, nuisance per se and nuisance by business practice, with additional claims against non-debtors for negligence and nuisance by business practice.  *See generally* Ex. 1, Amended Complaint.  All of these claims are based entirely upon Maryland law and hence are state law claims.  There are no bankruptcy issues in the Civil Action.

Factor No. 3

The third factor concerns the difficulty or unsettled nature of applicable law.  The public nuisance and negligence claims in the Civil Action are routinely heard in Maryland state courts. However, the Communities' claims under the recently amended "Community Bill of Rights" present a case of first impression and raise new or, at the very least, unsettled questions of state law that are better addressed by the Circuit Court.  This is also, to the best of the Communities' knowledge, the first such case brought against multiple defendants entities linked by an individual (here, Mr. Wizig) in which the business practice of that network is the subject of related claims.  The interpretation of the "Community Bill of Rights," as well as the

11

8871644

adjudication of the two nuisance by business practice claims, are state law-based theories that are within the purview of the Maryland state court's expertise to decide.  Finally, the Communities' claims in the Civil Action involve no issues concerning bankruptcy law.  This factor also weighs in favor of abstention.

Factor No. 4

The fourth factor concerns the presence of a related proceeding commenced in state court.  Although there is a not a second related proceeding in the Circuit Court, the Circuit Court has managed the Civil Action for 1.5 years and was prepared to hold a jury trial to resolve the case in short order.  Thus, this factor favors abstention even in the absence of a second proceeding.

Factor No. 5

The fifth factor concerns the absence of any jurisdictional basis for the Civil Action other than 28 U.S.C. § 1334.  Although no federal question is presented, the Debtors have alleged that jurisdiction under 28 U.S.C. § 1332 because there is complete diversity.  This factor does not weigh in favor of abstention.

Factor No. 6

The sixth factor concerns the degree of relatedness to the Debtors' bankruptcy cases.  Here, the Order entered in the Civil Action requires the Debtors to remediate the unsafe and uninhabitable conditions of the vacant properties they own.  Their bankruptcy filings do not protect them from compliance with the Circuit Court's Order and the Debtors have to comply with the law.  *See* 28 U.S.C. § 959(b).  In addition, the Communities' damages claim in the Civil Action is a straightforward claim for monetary damages that is not intertwined with the bankruptcy.

8871644

<u>Factor No. 7</u>

The seventh factor is the substance as opposed to the form of an asserted core proceeding. The Debtors' Notice of Removal states that the Civil Action is "related to" the bankruptcy, suggesting that it is not a core proceeding. *See* Notice of Removal at ¶4. However, the Notice of Removal goes on to state that upon removal the Civil Action is core. *See id.* at ¶7.

It is well settled that a proceeding that "arises under" title 11 is a proceeding that is founded in or determined by substantive bankruptcy law. *See Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987). Here, Count I of the Amended Complaint against the Debtors claims a public nuisance, Count II claims nuisance per se under the "Community Bill of Rights," and Count III claims nuisance by business practice. All three of these claims, as well as the remaining claims against other defendants in the Civil Action are matters of Maryland state law. The Civil Action asserts no cause of action that is founded in or determined by substantive bankruptcy law and thus, does not "arise under" title 11.

A proceeding "arises in" a case under title 11 if it is a proceeding that is not based on any right expressly created by title 11, but would have no existence but for the bankruptcy case. *See Wood*, 825 F.2d at 97. The Civil Action does not "arise in" title 11 because, as set forth above, it is based purely on state law causes of action which exist independently of bankruptcy. The causes of action alleged in the Amended Complaint clearly stand alone and are separate from the Debtors' bankruptcy cases. The fact that the Debtors' conduct underlying the claims continues to occur now that the bankruptcy cases have been filed is, at best, incidental to the gravamen of the Amended Complaint. Because the claims in the Civil Action exist independently from the Debtors' bankruptcy cases the Civil Action does not arise under title 11

8871644

or in the bankruptcy cases.  *See Valley Historic L.P. v. Bank of New York*, 486 F.3d 831, 836

(4th Cir. 2007).

Although bankruptcy courts can hear non-core "related to" proceedings, they cannot

enter final orders and judgments in such proceedings:

> A bankruptcy judge may hear a proceeding that is not a core
> proceeding but that is otherwise related to a case under title 11. In
> such proceeding, the bankruptcy judge shall submit proposed
> findings of fact and conclusions of law to the district court, and
> any final order or judgment shall be entered by the district judge
> after considering the bankruptcy judge's proposed findings and
> conclusions and after reviewing de novo those matters to which
> any party has timely and specifically objected.

28 U.S.C. § 157(c)(1).  Thus, this factor favors abstention.  The Communities reserve all rights

to respond further on this factor should the Debtors clarify that they are pursuing an argument

that the Civil Action is core.

Factor No. 8

The eighth factor is whether state law claims are severable from core matters such that

judgments could be entered in state court.  Because the Communities' Civil Action claims

consist solely of state-law causes of action that are not "core" to the bankruptcy, there are no

state law claims that need to be severed.  This factor favors abstention.

Factor No. 9

The ninth factor concerns the burden on this Court's docket.  Counsel for the

Communities did not locate any evidence to suggest that the case loads of either this Court or the

Circuit Court are anything less than significant.  This factor would be neutral, except that the

Debtors' bankruptcy cases and the adversary proceeding are in their initial stages, while the Civil

Action had proceeded nearly to trial in state court.  As a result, the burden on this Court's docket

to administer the adversary proceeding is heavier than the burden on the state court to complete

8871644

the case, especially in light of the broad discovery Debtors seek pursuant to their 2004 Motions. There is no need for the bankruptcy court to burden its docket by starting over with the litigation of a purely state law matter that was nearing trial.

In addition, because the Civil Action is "non-core," this Court could not enter final judgment in the Civil Action, but would have to submit findings of fact and conclusions of law to the District Court for *de novo* review. The Circuit Court, on the other hand, could adjudicate the entire proceeding without such duplicative litigation.

Factor No. 10

The tenth factor, concerning forum shopping, also favors abstention. In the Civil Action, the Communities assert causes of action that arose in Maryland and are entitled to their choice of forum. In the face of non-compliance with the Circuit Court's Order granting partial summary judgment to the Communities and with trial on the horizon in two months, the Debtors' removal of the Civil Action to this Court on November 18 appears to have been an attempt by the Debtors to obstruct the resolution of the Civil Action.

Factor No. 11

The eleventh factor concerns the right to a jury trial. Here, the Communities have a right to a jury trial of their state law-based causes of action and demanded a jury trial when they filed the Civil Action. This factor weighs in favor of abstention.

Factor No. 12

The final factor, the presence of non-debtors in the proceeding, weighs in favor of abstention because five of the twelve defendants in the Civil Action are non-debtors, including the owners of more than half of the properties involved in the Action (Baltimore Return Fund, LLC and Compound Yield Play, LLC), the entities who contracted to

8871644

manage all of the properties involved in the action (SWE Homes L.P., and SWE Homes

GP LLC), and the individual behind all of the defendant entities (Mr. Wizig).

      In light of the foregoing, the interests of justice, comity with Maryland state courts,

and respect for State law provide ample basis for the Court to exercise its discretion and

abstain from hearing the Civil Action.

**II.**      <u>**Remand Is Also Appropriate on Equitable Grounds.**</u>

      Bankruptcy courts have broad discretion to remand cases over which they otherwise have

jurisdiction on any equitable ground. *See Ernst & Young LLP v. Devan (In re Merry-Go-Round*

*Enterprises, Inc.)*, 222 B.R. 254, 257 (D. Md. 1998) (grounds for remand similar to but not

bound by abstention law; any appropriate ground suffices).  The United States Code further

confirms explicitly that remand is permitted under "any equitable ground."  *See* 28 U.S.C. §

1452(b).  Although virtually the same factors have emerged for judging the propriety of

equitably remanding an action under Section 1452(b) and permissively abstaining under Section

1334(c)(1), every remand decision does not need to be justified under abstention law because

remand may be ordered on any equitable ground.  *See In re Colleen Inc.*, 406 B.R. at 682-83.

Here, Debtors' bankruptcy cases were filed in the face of non-compliance with the Circuit

Court's Order granting partial summary judgment and as trial was approaching in the Circuit

Court.  For the same reasons discussed above, remand on equitable grounds is an appropriate

result.

      In addition, the urgency involved based on the current condition of these properties

provides a further basis to remand in the interest of justice.  The structural collapse of certain

properties appears imminent or underway, thereby threatening public safety, as depicted in the

attached photographs.  *See* Ex. 3, photographs of 1574 Carswell St., 524 E. North Ave., and 38

8871644

N. Wheeler Ave.  Other properties remain open to casual entry and the elements pose, in violation of the Baltimore City Fire Code, severe fire, health and safety risks to those nearby. *See* Ex. 4, photographs of 514 Brice St. and 1570 Carswell St.  Overgrowth, along with piles of rubble and debris at some of the properties further threaten the health and safety of neighboring residents, and attract rodents, vermin, and dumping.  *See* Ex. 5, photographs of 1639 Abbotston St., 1611 Carswell St., 2121 Aiken Street, and 1 Willard St.  Debtors' desire to "re-litigate" the Civil Action in the adversary proceeding and further delay resolution is contrary to the interests of justice, especially where their neglect of the properties prior to the Civil Action and their failure to fully comply with the Court's Order as of this date have created the existing and ongoing nuisance conditions that threaten the well-being of the Communities.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court abstain from hearing the Civil Action and remand the Civil Action to the Circuit Court for Baltimore City.  A proposed Order is attached.

December 18, 2014

Respectfully submitted,

VENABLE LLP

*/s/ Laura S. Bouyea*
Jason C. Rose, Federal Bar No. 27684
Thomasina E. Poirot, Federal Bar No. 30090
Lucas J. Polcyn, Federal Bar No. 30181
Laura S. Bouyea, Federal Bar No. 27812
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 244-7400
(410) 244-7742 (telecopy)
jcrose@venable.com
tepoirot@venable.com

8871644

Case 14-00828    Doc 7    Filed 12/18/14    Page 18 of 19

ljpolcyn@venable.com
lsbouyea@venable.com

*Attorneys for Coldstream-Homestead-Montebello Community Corporation; Alliance of Rosemont Community Organizations, Inc.; Mount Clare Community Council, Inc.; Carrollton Ridge Community Association, Inc.; Operation ReachOut SouthWest, Inc.; and the Greater Greenmount Community Association, Inc.*

8871644

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of December 2014, a copy of the foregoing was mailed, first class mail, postage prepaid to:

Gerard Vetter, Esquire
Acting Assistant United States Trustee
Office of United States Trustee
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201

Cynthia Leppert, Esquire
Neuberger Quinn Gielen Rubin & Gibber
One South Street, 27th Floor
Baltimore, Maryland 21202

Lawrence J. Yumkas, Esquire
Lisa Yonka Stevens, Esquire
Yumkas, Vidmar & Sweeney, LLC
10211 Wincopin Circle, Suite 500
Columbia, Maryland 21044

/s/ Thomasina Poirot
Thomasina Poirot

8871644