# EXHIBIT 1

COLDSTREAM-HOMESTEAD-MONTEBELLO
COMMUNITY CORPORATION
3220-A The Alameda
Baltimore, MD 21218

and

ALLIANCE OF ROSEMONT COMMUNITY
ORGANIZATIONS, INC.
2718 Mosher St.
Baltimore, MD 21216

and

MOUNT CLARE COMMUNITY COUNCIL, INC.
400 S. Gilmor St.
Baltimore, MD 21223

and

CARROLLTON RIDGE COMMUNITY ASSOCIATION,
INC.
429 S. Bentalou St.
Baltimore, MD 21223

and

OPERATION REACHOUT SOUTHWEST, INC.
26 N. Fulton Ave.
Baltimore, MD 21223

and

GREATER GREENMOUNT COMMUNITY
ASSOCIATION, INC.
410 E. North Ave.
Baltimore, MD 21218

                Plaintiffs,

      v.

SCOTT WIZIG
7405 Avenue B
Bellaire, TX 77401-5105

and

BALTIMORE RETURN FUND, LLC
4500 Bissonnett St. #300
Bellaire, TX 77401

IN THE

CIRCUIT COURT

FOR

BALTIMORE CITY

Case No: 24-C-
13002570

*Serve On:*
*Stephen Harker, Resident Agent*
*53 E. Broadway, 1st Floor*
*Bel Air, Maryland 21014*

and

CHESAPEAKE ROW HOMES, LLC
P.O. Box 741109
Houston, TX 77274-1109

*Serve On:*
*Stephen Harker, Resident Agent*
*53 E. Broadway, 1st Floor*
*Bel Air, Maryland 21014*

and

COMPOUND YIELD PLAY, LLC
P.O. Box 741109
Houston, TX 77274

*Serve On:*
*Stephen Harker, Resident Agent*
*53 E. Broadway, 1st Floor*
*Bel Air, Maryland 2101*

and

HARBOR PIER HOMES, LLC
4500 Bissonnett St. #300
Bellaire, TX 77401

*Serve On:*
*Stephen Harker, Resident Agent*
*53 E. Broadway, 1st Floor*
*Bel Air, Maryland 21014*

and

INBROOK HOMES, LLC
P.O. Box 741109
Houston, TX 77274-1109

*Serve On:*
*Stephen Harker, Resident Agent*
*53 E. Broadway, 1st Floor*
*Bel Air, Maryland 21014*

and

MD LIBERTY HOMES, LLC
P.O. Box 741109
Houston, TX 77274

*Serve On:*
*Stephen Harker, Resident Agent*
*53 E. Broadway, 1st Floor*
*Bel Air, Maryland 21014*

and

NICKY'S ROW HOMES, LLC
P.O. Box 741109
Houston, TX 77274-1109

*Serve On:*
*Stephen Harker, Resident Agent*
*53 E. Broadway, 1st Floor*
*Bel Air, Maryland 21014*

and

PORT HOMES, LLC
P.O. Box 741109
Houston, TX 77274-1109

*Serve On:*
*Stephen Harker, Resident Agent*
*53 E. Broadway, 1st Floor*
*Bel Air, Maryland 21014*

and

WIZ HOMES, LLC
P.O. Box 741109
Houston, TX 77274-1109

*Serve On:*
*Stephen Harker, Resident Agent*
*53 E. Broadway, 1st Floor*
*Bel Air, Maryland 21014*

and

SWE HOMES L.P.
4500 Bissonnet, # 300
Bellaire, TX 77401

*Serve On:*
*R. Gary Laws, Registered Agent*
*9173 County Road 2226*
*Taft, TX 78390*

and

SWE HOMES GP LLC
P.O. Box 741109
Houston, TX 77274-1109

*Serve On:*
*R. Gary Laws, Registered Agent*
*9173 County Road 2226*
*Taft, TX 78390*

Defendants.

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## FIRST AMENDED COMPLAINT AND JURY TRIAL DEMAND

The Plaintiffs, Coldstream-Homestead-Montebello Community Corporation; Alliance of Rosemont Community Organizations, Inc.; Mount Clare Community Council, Inc.; Carrollton Ridge Community Association, Inc.; Operation ReachOut SouthWest, Inc.; and Greater Greenmount Community Association, Inc. (collectively, the "Communities"), through undersigned counsel, sue Baltimore Return Fund, LLC; Chesapeake Row Homes, LLC; Compound Yield Play, LLC; Harbor Pier Homes, LLC; Inbrook Homes, LLC; MD Liberty Homes, LLC; Nicky's Row Homes, LLC; Port Homes, LLC and Wiz Homes, LLC (the "LLC Defendants"), SWE Homes L.P., SWE Homes GP LLC (the "Management Defendants"), and Scott Wizig, individually and as managing member of the LLC Defendants (collectively "Defendants"), and allege, upon facts and information and belief, as follows:

**INTRODUCTION**

1.   This action arises out of Defendants' continuing violations of state and local laws by ignoring the unsafe and uninhabitable conditions of approximately 140 Baltimore City properties they own and manage, 57 of which are the subject of this complaint. These dangerous conditions significantly and negatively affect the use and enjoyment of adjoining properties as well as the health, safety and welfare of the neighborhoods in which the properties sit. These conditions have also led to an unreasonable interference with a right that is common to the general public. Defendants knowingly disregarded the accumulation of debris, garbage, refuse, graffiti, weeds, overgrown vegetation, and other offensive, dangerous, unhealthy, and unsanitary matter on their properties throughout the City of Baltimore. These continued violations of state and local laws are the subjects of numerous violation notices from the Baltimore City Department of Housing and Community Development and constitute a public nuisance and nuisance per se, and Defendants' business practice also constitutes a nuisance.

2.   The nine LLC Defendants own the 57 properties[1] that are the subject of this nuisance action (collectively, the "Properties," all of which are listed in Exhibit A[2] by LLC Defendant). All nine LLC Defendants share Defendant Scott Wizig as their managing member.

---

[1] Since filing this action, two properties were condemned and are now owned by Baltimore City: 2701 and 2748 Tivoly ("Tivoly Properties"). Since the Tivoly Properties support the Nuisance by Business Practice claim asserted in Count Three, these Properties remain the subject of this Complaint. To the extent that there are references within the Complaint to "ownership" of the 57 Properties, the Tivoly Properties are excluded from such reference.

[2] Plaintiffs have not re-attached Exhibits A to W to the Amended Complaint, as these Exhibits are voluminous and remain unchanged. Please refer to the original Complaint, filed on April 30, 2013, for Exhibits A through W.

3.     The LLC Defendants and members of SWE Homes GP LLC contracted with SWE Homes L.P. to manage the Properties.  Among other duties, the management agreement called for the Management Defendants to "promptly investigate and maintain written reports as to all accidents, claims for damage relating to the ownership, operation and maintenance of the Property and its estimate of the cost of repair thereof" with regard to the Properties.  (*See* Ex. X, Management Agreements between SWE Homes L.P. and the LLC Defendants ("Management Agreements")).

4.     Mr. Wizig, individually and through his LLC entities, has purchased approximately 140 vacant properties, primarily through foreclosure of tax lien certificates and to date, has failed to remediate any of them.  This process of acquiring properties in disrepair, contracting with the Management Defendants for the maintenance of the properties, and failing to properly abate any of their various City Code violations has established a pattern and practice that threatens the welfare of the Communities' neighborhoods.  Indeed, the duration of this pattern and practice has continued over many years, as Mr. Wizig and his related LLCs have acquired additional properties at Baltimore City's annual tax foreclosure sale.

5.     Scott Wizig is the Founder and President of SWE Homes L.P., which he formed "to be the loan servicer for his various real estate entities and also helped [sic] with property management."  (Ex. Y, SWE Homes Website (SWE is an acronym for Scott Wizig Enterprises)).

6.     SWE Homes GP LLC is the General Partner of SWE Homes L.P., and Scott Wizig is its President, Authorized Officer, and Managing Member.  (*See* Ex. Z, SWE Homes L.P. Certificate of Limited Partnership; Ex. AA, SWE Homes GP LLC Articles of Organization, Ex. BB, SWE Homes GP LLC 2012 Tax Report).

7.     The patterns and practices of the Defendants are not novel.  For instance, it was alleged in an indictment against Mr. Wizig in New York that he purchases properties at auction under the cover of an LLC. The properties in New York were said to be in deplorable and uninhabitable conditions, and were cited for housing code violations. The properties in New York also were alleged to be leased with unlawful and unconscionable provisions, or sold without required disclosures at inflated prices with an 11.99% interest rate mortgage held by Mr. Wizig and his related LLC.  (*See* Ex. B, County of Erie, New York Indictment).

8.     It has been reported that Mr. Wizig's unlawful business practices extend beyond New York and into Texas. (Ex. C, Baltimore City Paper article dated 10/6/2004 and Houston Press article dated 9/2/2004)  Indeed, the indictment in New York against Mr. Wizig and his related LLC[3] alleged, among other things, that he "engaged in illegal, deceptive, and fraudulent business practices that harm consumers." (Ex. D, Affirmation of James Morrissey at 1).

9.     Working in conjunction with Baltimore City agencies, other nonprofits, and for-profit businesses in their neighborhoods, the Communities expend considerable time and money to ensure the well-being of their residents.

10.     The efforts of the Communities have been hindered, however, by the failure and refusal of the Defendants to maintain the properties within the Communities in a stable and livable condition.

## PARTIES

11.     Collectively, the Communities in this action are nonprofit community associations that are composed of residents of a community within which the nuisance properties are

---

[3] Analogous to the NY LLC, Wizig has created various LLCs under Maryland law to conduct his business practices.

located. The associations operate for the promotion of the welfare, improvement, and enhancement of their respective communities, and are either 501(c)(3) tax-exempt nonprofits and/or in good standing with the State Department of Assessments and Taxation.

12.   Plaintiff Coldstream-Homestead-Montebello Community Corporation, a nonprofit 501(c)(3) corporation composed of community residents and located at 3220-A The Alameda, Baltimore, MD 21218, operates for the promotion of the welfare, improvement and enhancement of the Coldstream-Homestead-Montebello community of Baltimore City where Defendants own the seven properties listed on Exhibit E.

13.   Plaintiff Alliance of Rosemont Community Organizations, Inc., a nonprofit corporation composed of community residents and located at 2718 Mosher Street, Baltimore, MD 21216, operates for the promotion of the welfare, improvement and enhancement of the Western neighborhoods of Baltimore City where Defendants own the twelve properties listed on Exhibit F.

14.   Plaintiff Mount Clare Community Council, Inc., a 501(c)(3) nonprofit corporation composed of community residents and located at 400 S. Gilmor St., Baltimore, MD 21223, operates for the promotion of the welfare, improvement and enhancement of the Mount Clare community, where Defendants own the two properties listed on Exhibit G.

15.   Plaintiff Carrollton Ridge Community Association, Inc., a 501(c)(3) nonprofit corporation composed of community residents and located at 429 S. Bentalou St., Baltimore, MD 21223, operates for the promotion of the welfare, improvement and enhancement of the Carrollton Ridge community of Baltimore City where Defendants own the three properties listed on Exhibit G.

16.   Plaintiff Operation ReachOut SouthWest, Inc., a 501(c)(3) nonprofit corporation composed of community residents and located at 26 N. Fulton Ave., Baltimore, MD 21223, operates for the promotion of the welfare, improvement and enhancement of the Southwest Baltimore City where Defendants own the twenty-three properties listed on Exhibit G.

17.   Plaintiff Greater Greenmount Community Association, Inc., a 501(c)(3) nonprofit corporation composed of community residents and located at 410 E. North Ave., Baltimore, MD 21218, operates for the promotion of the welfare, improvement and enhancement of the Greater Greenmount neighborhood of Baltimore City where Defendants own the fifteen properties listed on Exhibit H.

18.   Defendant Scott Wizig is a resident of Bellaire, Texas and is the managing member of each of the Defendant LLCs described below.

19.   Defendant BALTIMORE RETURN FUND, LLC is the owner of Properties listed on Exhibit A that are geographically located within the respective boundaries of Coldstream-Homestead-Montebello Community Corporation, Greater Greenmount Community Association, Inc. and Operation ReachOut SouthWest, Inc.

20.   Defendant CHESAPEAKE ROW HOMES, LLC is the owner of Properties listed on Exhibit A that are geographically located within the respective boundaries of Alliance of Rosemont Community Organizations, Inc. and Operation ReachOut SouthWest, Inc.

21.   Defendant COMPOUND YIELD PLAY, LLC is the owner of Properties listed on Exhibit A that are geographically located within the respective boundaries of Alliance of Rosemont Community Organizations, Inc., Operation ReachOut SouthWest, Inc., Carrollton Ridge Community Association, Inc. and Mount Clare Community Council, Inc.

22.   Defendant HARBOR PIER HOMES, LLC is the owner of Properties listed on Exhibit A that are geographically located within the respective boundaries of Alliance of Rosemont Community Organizations, Inc., Greater Greenmount Community Association, Inc., Operation ReachOut SouthWest, Inc. and Mount Clare Community Council, Inc.

23.   Defendant INBROOK HOMES, LLC is the owner of Properties listed on Exhibit A that are geographically located within the respective boundaries of Greater Greenmount Community Association, Inc. and Operation ReachOut SouthWest, Inc.

24.   Defendant MD LIBERTY HOMES, LLC is the owner of the Property listed on Exhibit A that is geographically located within the boundaries of Alliance of Rosemont Community Organizations, Inc.

25.   Defendant NICKY'S ROW HOMES, LLC is the owner of Properties listed on Exhibit A that are geographically located within the respective boundaries of Coldstream-Homestead-Montebello Community Corporation and Operation ReachOut SouthWest, Inc.

26.   Defendant PORT HOMES, LLC is the owner of Properties listed on Exhibit A that are geographically located within the respective boundaries of Alliance of Rosemont Community Organizations, Inc., Operation ReachOut SouthWest, Inc. and Greater Greenmount Community Association, Inc.

27.   Defendant WIZ HOMES, LLC is the owner of the Property listed on Exhibit A that is geographically located within the boundaries of Greater Greenmount Community Association, Inc.

28.   Defendant SWE HOMES L.P. has entered into Management Agreements with the LLC entities relating to the care, maintenance and repairs of the Properties and has the ability to affect title to the Properties.

29.    Defendant SWE HOMES GP LLC is the general partner of SWE Homes L.P. and its members are signatories to the Management Agreements.

## JURISDICTION AND VENUE

30.    This court has jurisdiction and venue over this matter pursuant to §§ 6-102, 103 and 201 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.

## GENERAL ALLEGATIONS

31.    The LLC Defendants, at the direction of Scott Wizig, purchased tax sale certificates for each of the residential Properties at a Baltimore City tax sale auction for an average of approximately $4,891 (between $491 and $16,500).[4] Once acquired, Defendants failed to address the vacant and uninhabitable conditions of the Properties for months to years.

32.    Based upon these business patterns and practices, it is apparent that at the time LLC Defendants and Scott Wizig purchased the Properties, they had no intention of remediating the Properties or complying with the City Codes that are associated with the ownership and maintenance of a property.  Instead, they contracted with the Management entities and held the Properties in their vacant and uninhabitable condition until such time as the market conditions permitted a profit through re-sale.

33.    The Defendants own and/or control the Properties.  At all times relevant to this Complaint, Defendants have abandoned these Properties, leaving the Properties to deteriorate to the great detriment of the health and welfare of the community in general and nearby

---

[4] This average excludes 1 Willard St., an industrial property acquired by Chesapeake Row Homes, LLC for approximately $57,193 in 2006.

11

residents in particular. (Exhibits I - M, Affirmations of Andre Cross, Lonnie Harvey, Dewey Barksdale, Shang Jones and Linda Johnson).

34.     The Properties are all vacant structures or lots. Some Properties have structurally deficient houses, exhibiting crumbling brick, broken windows, falling porches and/or gaping roofs, to name just some of the problems. The vacant lots[5] only exist where the houses on the Properties fell into such deplorable and hazardous conditions that Baltimore City deemed it necessary to demolish the vacant structures.  As a result of their abandonment, the Properties accumulate garbage, debris, refuse, graffiti, high grass and weeds, overgrown vegetation, or other offensive, dangerous, unhealthy, and unsanitary matter.   The unhealthy and illegal conditions of Defendants' Properties are depicted in the photographs taken on or before April 11, 2013.  These photographs were attached to the Complaint as Exhibit N.

35.     Because of these conditions, the Baltimore City Department of Housing and Community Development has sent Defendants notices (collectively, "the City Notices") regarding numerous violations of the BALTIMORE, MD., BUILDING, FIRE, AND RELATED CODES ("Building Code") Part II, §§ 115-121 (2011).  Each of the vacant structures is subject to at least one City Notice with a current and ongoing violation.   These code violations include, but are not limited to, accessible openings, as well as trash, debris and high grass and weeds on the premises. The respective violations for each vacant building were attached to the Complaint as Exhibit O.

36.     It is no mystery why the conditions of the Properties violate the Baltimore City Codes.   The Properties' conditions attract vagrants and criminal activity, function as trash receptacles, omit odors, diminish the value of neighboring properties, and put adjacent

---

[5] All of the Properties consist of vacant structures with the exception of six properties: 302 East 24th Street, 2514 Emerson Street, 2529 Emerson Street, 343 Stinson Street, 2117 Hollins Street, and 22 South Pulaski Street, previously subject to City Notices, which are now vacant lots subject to recurrent sanitation violations.

neighbors and passersby in imminent danger, especially as the structures collapse as a result of Defendants' neglect. In short, the conditions of these Properties significantly affect the health and well-being of the neighborhood residents and substantially and unreasonably interfere with area residents' use and enjoyment of their properties.

37.    Examples of these threatening conditions include, but are not limited to, the following:

- 924 Bonaparte Avenue: The front windows and the windows in the rear of the property are broken and exposed to the elements. The rear yard is full of trash. The columns supporting the porch are chipped and peeling. (See Exhibit N-7).

- 2709 Hugo Avenue: The front door and windows are boarded. The house lacks front stairs, the front porch is unstable, and trash litters the front and rear yard. Affixed to the front windows is a general advertising sign for investment properties. The roof has collapsed and the building is open to the elements. The rear windows and doors are boarded or broken. (See Exhibit N-33).

- 2901 Mosher Street: The front porch roof appears ready to collapse, held up only by rotten wood. The roof of the property appears similarly defective and may be admitting rain. Weeds overgrow the front and backyard. Beams from a second-story porch jut out from the rear of the property. (See Exhibit N-39).

- 2020 Rayner Avenue: The roof and back wall of the property has collapsed and a tree has fallen into the house, which is open to the elements. Affixed to the front window and doors are multiple signs. Windows are boarded in the front. (See Exhibit N-46).

- 1 Willard Street: There are boarded, bricked, broken, and exposed windows. Stairs on the side of the building are collapsing. High grass and weeds grow throughout the property and there is debris and trash strewn throughout the property. (See Exhibit N-57).

38.    Based on the City Notices, and Building Code Part II §§ 114.21-114.26, 202.2.29, Defendants knew or, in exercise of due care, should have known that their conduct and their business practices were creating and maintaining a public nuisance.

39.    Defendants owe the Communities, the residents and members that comprise the Communities' respective neighborhoods and the public a duty to abate the nuisance conditions and discontinue the accumulation of offensive, dangerous, unsanitary, and unhealthy matter on their Properties.

40.    The hazardous conditions on the Defendants' Properties violate City Code statutes and Defendants are not immune to liability for their actions.

41.    The perpetual unsafe conditions of the Properties constitute a continuing nuisance that substantially and unreasonably injures the health and welfare of the Communities' members and residents and interferes with their enjoyment of life and property.

## COUNT ONE
## (PUBLIC NUISANCE)
## AGAINST ALL DEFENDANTS

42.    The Communities reassert the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

43.    The Communities bring this cause of action in their representative capacity on behalf of the residents of their respective community associations pursuant to the Annotated Code of Maryland, Real Property article, § 14-123 ("The Community Bill of Rights") (2012).

44.    The Communities aver that the nuisance and conditions of the Properties have existed for months to years and continue to occur today.

45.    The Baltimore City Department of Housing and Community Development has sent numerous City Notices to the Defendants, notifying them of violations.  See Exhibit O.

46.    At least 60 days ago, pursuant to section 14-123(c)(3) of The Community Bill of Rights, the Communities sent notice to the LLC Defendants (owners of record) by certified mail and by posting at the Properties requesting abatement of the nuisance conditions on the

respective Properties.   The abatement notices, which were attached to the Complaint as Exhibit P, and the affirmations of notice by the Communities are attached as Exhibits Q-V, all of which are incorporated herein by reference. Additionally, pursuant to section 14-123(c)(4) of The Community Bill of Rights, the Communities sent notice by certified mail to the appropriate code enforcement agency.   To date, the Defendants have not abated the nuisance conditions of the Properties and the Properties remain in their vacant, uninhabitable and illegal condition.

47.   The accumulation of unaddressed violations forced the City to issue Notices of Intent to Demolish letters for certain properties, advising the Defendants that "the Building Official has determined that your property has sustained considerable damage. The Building Official is authorized to repair, rebuild, demolish or take any other action necessary to eliminate or make safe any nuisance, blight, or unsafe condition without further notice." These properties were subsequently demolished and the Demolition Notices for the demolished properties are attached as Exhibit W[6] and incorporated herein by reference.

48.   The illegal, unsanitary, and nuisance conditions on the Properties owned and managed by the Defendants substantially and unreasonably injure the health and unreasonably interfere with the enjoyment and life and property of the residents of the Baltimore City neighborhoods covered by the Communities' boundaries.

49.   As a result of the behavior of the Defendants, the Communities have suffered a harm of a kind different and distinct from that suffered by other members of the public in that the Communities are made to endure unsafe, unhealthy and unsanitary conditions in their respective neighborhoods; diminution in the economic value of the properties in their

---

[6] The Community Associations await a copy of the demolition notice for 343 Stinson Street, which was demolished within the past year, in addition to a copy of the demolition notice for 2117 Hollins Street.

neighborhoods; a loss of contributions, membership and participation in the Communities by residents and potential residents; and/or a disproportionate amount of their time, energy, and funding on clean-ups.

50.    By permitting injurious, illegal, unreasonable, and dangerous conditions to persist on the Properties, Defendants have caused a continuing nuisance within the meaning of The Community Bill of Rights. MD. CODE, Real Property, § 14-123(a)(4).

51.    As a result of this particular harm, the Communities request judgment against the Defendants, including monetary damages and the remedy of the nuisance conditions.

## COUNT TWO
## (NUISANCE PER SE)
## AGAINST ALL DEFENDANTS

52.    Plaintiffs reassert the allegations contained in paragraphs 1 through 51 as if fully set forth herein.

53.    The conditions of the Properties constitute a nuisance per se under Part II, § 116.4 of the Building Code, which provides, in pertinent part: "Every vacant structure…is declared to be a fire hazard and a nuisance per se." Vacant structures, so long as they are kept clean and free of debris, may only be boarded temporarily while being rehabilitated, and must be kept boarded while in the process of being rehabilitated.  Building Code Part II, § 116.4.3, Part VII § 301.3, Part VIII § 311 (2011).  All of the structures on the Properties accumulate debris, and were not temporarily boarded for the purposes of rehabilitating the Properties, but were boarded, and at times open to casual entry and the elements, in violation of Part II, § 116 of the Building Code, for months and years.

16

54.     Pursuant to the Community Bill of Rights, a "nuisance" is defined as "an act knowingly created, performed, or maintained on private property that constitutes a local code violation and that:

     (i)    Significantly affects other residents of the neighborhood; and

     (ii)   1. Is Injurious to public health, safety, or welfare of neighboring residents; or

           2. Obstructs the reasonable use of property in the neighborhood.

55.     Defendants' Properties, as described above, constitute a nuisance per se in that they are structurally unsound, lack the required roofs, windows, doors and sometimes stairs, and they pose dangerous conditions such as falling brick, broken glass, and jutting wood planks. The Properties attract vagrants, as they are improperly or not boarded and accumulate trash, garbage, refuse, debris, graffiti, weeds, overgrown vegetation, rodent and insect infestation, and other offensive, dangerous and unhealthy matter.

56.     By allowing the illegal, unsanitary and unhealthy matter to accumulate on their Properties, the Defendants violate numerous City Codes, including the Building Code Part II §§ 114, 116, Part VII §§ 301, 304 - 306, Part VIII §§ 110 and 311 (2011); BALTIMORE, MD., HEALTH CODE §§ 5-201, 5-702, and 5-901; and BALTIMORE, MD., ZONING CODE §§ 11-206, 11-313 (2011), and thus also violate the Community Bill of Rights. By operation of law, including violation of at least one statute, these violations constitute a nuisance per se.


**COUNT THREE**
**(NUISANCE BY BUSINESS PRACTICE)**
**AGAINST ALL DEFENDANTS**

57.     Plaintiffs reassert the allegations contained in paragraphs 1 through 56 as if fully set forth herein.

17

58.   The LLC Defendants and Scott Wizig are in the business of purchasing numerous vacant properties at Baltimore City tax sale auctions, including the 57 Properties that are the subject of this Complaint.  Defendants' business practices reveal that they had no intent to remediate or abate the deplorable conditions of the Properties at the time they purchased the Properties.

59.   As a façade, the LLC Defendants, promptly after they are formed and at the direction of Mr. Wizig, contract with the Management Defendants for the management of the Properties but fail to perform repairs or otherwise maintain the Properties.

60.   Collectively, Defendants own and manage approximately 140 vacant properties throughout Baltimore City, predominately all of which are or have been the subject of code violations.

61.   Defendants' pattern and practice of holding the Properties vacant for months and years without any intent of making any improvements reaps havoc upon the neighborhood residents and the Communities, as they confront daily the physical dangers and fall victim to the economic problems caused by the vacant Properties.

62.   Defendants' actions of abatement avoidance and permitting numerous properties, including the properties listed in Exhibit A, to remain vacant for years, are detrimental to the health, safety, and quality of life of the residents in the vicinities of the Properties and to the City of Baltimore.

63.   Defendants' actions cause entire neighborhoods to deteriorate, diminishing the values of individual Properties within the respective community association's boundaries, as well as affecting the neighborhoods as a whole.

64.    As a result of the business practices of the Defendants, the residents that comprise the Communities endure dangerous property conditions, accumulations of garbage, trash, debris, refuse, graffiti, weeds, overgrown vegetation, rodent and insect infestation, and other offensive, dangerous, unhealthy, and unsanitary matter in their immediate vicinity, resulting in a diminution of property values and a health hazard.  This is detrimental to the residents and has resulted in a disturbance of the use and enjoyment of their homes and neighborhoods.

65.    By continuing to purchase properties throughout Baltimore City through tax sale auction and ignoring Baltimore City statues regarding the necessity to maintain owned land and structures, Defendants have continued to create a public nuisance and nuisance per se by their business practices.

## COUNT FOUR
### (NEGLIGENCE AGAINST SCOTT WIZIG, INDIVIDUALLY AND AS MANAGING MEMBER OF THE LLC ENTITIES)

66.    Plaintiffs reassert the allegations contained in paragraphs 1 through 65 as if fully set forth herein.

67.    Defendant Scott Wizig is the managing member of the Defendant LLCs.  As such, Mr. Wizig manages the day to day affairs of the LLCs, has the capacity to sell the Properties and otherwise has the ability to change or affect the title of the Properties and, therefore, has a duty to maintain the Properties.

68.    Pursuant to Building Code Part II § 114, owners and operators are held jointly liable for Code violations pertaining to the property, including, but not limited to, land and structures that they control and are responsible for violations that constitute a nuisance.

69.    Mr. Wizig is liable for the nuisances discussed herein by operating and controlling the Defendant LLCs and personally directing the business operations of the LLCs

19

that have received the various code violations that constitute a nuisance and deprive Baltimore City residents of their use and enjoyment of property.

70.     As managing member of each LLC, Mr. Wizig has created the pattern and practice of purchasing properties at tax sale, including the Properties that are subject of this complaint, with the intention of leaving the Properties vacant. This business practice, created and managed by Mr. Wizig, has resulted in the accumulation of City Notices referenced in Exhibit O and has created the unsanitary, dangerous and illegal conditions discussed herein.

71.     Mr. Wizig is charged with personal knowledge of the conditions of the Properties and the violations discussed herein, but he has ignored the condition of the Properties and the effect on neighborhood residents, the general public and the City of Baltimore.

72.     By controlling, operating and directing the purchase, sale and day to day operations of the Properties, Mr. Wizig personally committed, inspired or participated in all violations occurring at the Properties and is liable for the nuisances they have consistently caused.

<u>**COUNT FIVE**</u>
<u>**(NEGLIGENCE)**</u>
<u>**AGAINST SWE HOMES L.P. AND SWE HOMES GP LLC**</u>

73.     Plaintiffs reassert the allegations contained in paragraphs 1 through 72 as if fully set forth herein.

74.     The Management Defendants contracted with the LLC Defendants to "supervise and direct the management, operation and supervision of the Propert[ies]," and to "supervise the making and supervision of all ordinary and extraordinary repairs, decorations, and alterations" (Ex. X, Management Agreements at 1.05).

75.    Pursuant to the Management Agreement, the Management Defendants have the authority to order repairs and maintain the improvements on the Properties, as well as affect title to the Properties.

76.    Pursuant to Building Code Part II § 114, owners and operators (including property managers) are held jointly liable for Code violations pertaining to the property, including, but not limited to, land and structures that they control and are responsible for violations that constitute a nuisance.

77.    The Management Defendants are liable for the nuisances discussed herein by operating and controlling the Properties and failing to address the various code violations that constitute a nuisance and deprive Plaintiffs of their use and enjoyment of property.

78.    The Management Defendants have created the pattern and practice of contracting with the LLC Defendants and Scott Wizig for the management of real property, including the Properties that are subject of this complaint, with no intent to repair or otherwise address the code violations or nuisance conditions.   This business practice has resulted in the accumulation of City Notices referenced in Exhibit O and has created the unsanitary, dangerous and illegal conditions discussed herein.

79.    The Management Agreement between the LLC entities and members of SWE Homes GP LLC authorized SWE Homes L.P. to maintain, repair, manage the day to day operations of the Properties, and affect title to the Properties.

80.    SWE Homes has the authority to pay the city fines and violations associated with the City Properties.  (*See, e.g.*, Ex. CC, SWE Homes checks).

81.    By retaining the ability to control, operate, repair, maintain, sell and conduct the day to day operations of the Properties and failing to do so, the Management Defendants

committed, inspired or participated in all violations occurring at the Properties and is liable for the nuisances they have consistently caused.

## COUNT SIX
## (INJUNCTION)
## AGAINST ALL DEFENDANTS

82.    Plaintiffs reassert the allegations contained in paragraphs 1 through 81 as if fully set forth herein.

83.    Unless the Court issues an injunction, Defendants will continue to engage in the nuisance business practice that is harming Baltimore City's neighborhoods.  Specifically, such conduct will result in irreparable harm to the Communities, which will continue to suffer injury and damage and interference with the safety and welfare of their properties and neighborhoods.  The threat of such irreparable and ongoing damage justifies the issuance of an injunction.

84.    Injunctive relief is necessary to prevent Defendants from disposing of the Properties and rendering this issue moot.

85.    Plaintiff has no adequate remedy at law in that damages are insufficient and inadequate to protect the public from the present and ongoing danger and harm caused by the public nuisance conditions on the Defendants' properties.

86.    Injunctive relief is necessary to prevent the Defendants from continuing their nuisance practices and to prevent multiple lawsuits.

WHEREFORE, Plaintiffs request judgment against the Defendants on the causes of action as follows:

1.    Monetary damages in the amount of $8 million against Defendants;

22

2.    Declaratory relief declaring the Defendants' properties a public nuisance and a nuisance per se;

3.    Preliminary and permanent injunction prohibiting Defendants from allowing their properties to accumulate offensive, dangerous, unhealthy, and unsanitary matter and attract vagrants and crime;

4.    Preliminary injunction prohibiting the transfer or sale of the Properties;

5.    Affirmative injunctive relief for the remediation of the Properties;

6.    General damages according to proof;

7.    Special damages according to proof;

8.    Costs of suit, including attorney's fees;

9.    All civil remedies, administrative penalties, fines, and liens to which Plaintiffs may be entitled; and

10.    Any other and further relief that as the Court may deem just and proper.

Respectfully submitted,

BY:    _____

Jason C. Rose
Daniel P. Moylan
Thomasina Poirot
Venable LLP
750 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
jcrose@venable.com
dpmoylan@venable.com
tepoirot@venable.com
(410) 244-7400
(410) 244-7742 (fax)

Kristine Dunkerton
Robin Jacobs
Community Law Center, Inc.
3355 Keswick Road, Suite 200
Baltimore, Maryland 21211
kristined@communitylaw.org
robinj@communitylaw.org
(410) 366-0922 ext. 15
(410) 366-7763

*Attorneys for the Plaintiffs*

### JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all matters so triable.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of May, 2014, a copy of the foregoing First Amended Complaint and accompanying Exhibits was served by electronic delivery and U.S. mail to counsel for the LLC Defendants and Scott Wizig: Dana Petersen Moore, Esquire, PETERSEN MOORE LLC, 1340 Smith Ave, Suite 200, Baltimore, Maryland 21209, dmoore@petersenmoorelaw.com.

Thomasina Poirot